# CHARLESTON.

ANDERSON *v.* BALTIMORE & OHIO RAILROAD CO.

Submitted February 24, 1914.   Decided April 7, 1914.

1. RAILROADS—*Liability—Defective Cars—Negligence of Coal Company.*

Where a corporation, engaged in mining coal for shipment, accepts a car for use at its mines, knowing it to be inadequately equipped with brakes, and, in an effort to adjust the car to the tipple to receive its complement of coal, negligently permits it to escape, thereby inflicting injury on the property of another not its employee or an employee of the carrier furnishing the car, the carrier will not be held liable therefor, though the injury may not have occurred had the car so furnished been equipped with brakes adequate to control its movements.   (p. 18).

2. NEGLIGENCE—*Intervening Cause—Liability.*

While the negligent act of one person may, as a natural consequence, cause injury to another; yet if, before the injury results, the negligent act of a third person intervenes and produces the injury, the latter alone is responsible therefor, though but for the first negligent act the injury could not have occurred.   (p. 21).

3. SAME—*Cause of Injury—"Proximate Cause."*

Where, by the intervening negligent act of a responsible agency, the causal connection between the first negligent act and the injury is broken, the last act, in legal contemplation, is regarded as the sole cause of the injury.   The proximate cause thereof is the last negligent act contributing thereto and without which the injury would not have resulted.   (p. 19).

Error to Circuit Court, Marshall County.

Action by Jesse Anderson against the Baltimore & Ohio Railroad Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and Rendered.*

*Hooten & Hooten,* for plaintiff in error.
*D. B. Evans,* for defendant in error.

LYNCH, JUDGE:

The answer to the question, who is directly responsible for the injury to plaintiff's property, solves the only important inquiry presented on this writ of error.

The declaration avers that the railroad company, as a common carrier and as operator of a spur track or switch from its main line to a coal mine, furnished the coal company a car, which, because of defective brakes, escaped from its employees, ran down an incline, and collided with and injured plaintiff's wagon and team. The defect alleged was want of a brake on the colliding car sufficient to enable the employees of the coal company to check and control its movements, in order to adjust it to the coal dumps from which to receive coal for shipment.

That injury occurred in the manner averred, is not denied; nor is the fact that the coal company's agents failed, either by the brakes or by the use of any other adequate appliances, to control the movements of the car while attempting to adjust it to the coal tipples, though at the time they knew the brakes were insufficient for the purpose; nor is the further fact that plaintiff was rightfully engaged in the act of loading another car, placed on the spur track for that purpose by the defendant at plaintiff's instance.

While there is some evidence tending to show that the brakes were sufficient to check and control the movements of the car; yet in view of the other facts appearing in the record and of the conclusion reached on this review, it may be conceded that the brakes were inadequate. If so, both the coal company and defendant knew of the defect; because the same car escaped the mine employees the day prior to the accident of which plaintiff complains, and, at their instance, the defendant again replaced the car near and above the tipple. With this knowledge, the coal company's agents and employees undertook to move the car, after it was partially loaded, when it again escaped and ran down the incline to the place of injury. Hence, the query whether the negligence of the railroad company, which placed the car on the switch, or that of the coal company in failing to control the car, caused the injury. Whose was the negligent act without which the injury would not have occurred?

Proximate cause, the courts' have said, is that which naturally led to and which may have been expected to be directly instrumental in producing the loss. *State* v. *Railroad Co.,* 52 N. H. 552; *Topshan* v. *Lisbon,* 65 Me. 449; *Insurance Co.* v. *Boone,* 95 U. S. 117. Or, as differently stated, it is that act which directly produced or concurred in producing the injury. The construction or interpretation of the oft-recurring legal maxim most frequently adopted is that "in determining what is the proximate cause the true rule is that the injury must be the natural and probable consequence of the negligent act." *Hoag* v. *Railroad Co.,* 85 Pa. 293, 27 Am. Rep. 653; *Maheny* v. *Wagner,* 116 Pa. 344, 2 Am. St. 604; *Railroad Co.* v. *Kellogg,* 94 U. S. 469; *Putnam* v. *Railroad Co.,* 55 N. Y. 108, 14 Am. Rep. 190; *Sharp* v. *Howell,* L. R. 7 Com. P. 253.

But it may be urged, in dissent from the application of this construction to the facts of this case, that the coal company could not by the exercise of ordinary prudence or due and reasonable care have foreseen that the movements of the car would pass beyond the control of its agents, and thereby cause the injury. Evidently, neither company intended to injure plaintiff's property. However, it is not essential to raise a liability that the injury should have been intended or contemplated by either of them. The active agency in the production of the wrong may nevertheless be held liable for any injury which after its completion appears to have been the natural and probable consequence of his act. The general character of the act is that to which the law looks to determine the real agent of the wrong. "When there is danger of any particular injury, which actually occurs, we must surely say that it is the usual, ordinary, natural and probable result of the act exposing the person or thing injured to the danger." *West* v. *Ward,* 77 Ia. 323, 14 Am. St. 284; *Railroad Co.* v. *Wood,* 113 Ind. 544; *Hale* v. *Winsor,* 118 Mass. 251; *Bunting* v. *Hoggsett,* 139 Pa. 363; *Railroad Co.* v. *Chapman,* 80 Ala. 605. The proximate cause is the one without which the accident would not have occurred. *Taylor* v. *Baldwin,* 78 Cal. 517.

The railroad company and the coal company knew the spur track was constructed on an ascending grade, the highest

point being near the tipple; and that, uncontrolled, the car would run violently down the grade in the direction of defendant's main track, and thus probably cause injury. But, notwithstanding defendant's negligence in placing on the switch a car improperly or defectively equipped, was such negligence on its part the proximate or the remote cause of the injury? Whose negligence was it which in fact caused the injury? When defendant replaced the car at or near the tipple, it secured it by brake and by blocks. The car there remained until released by the coal company's agents—released by them of course to adjust it to the tipple for the purpose of receiving its complement of coal. But it is immaterial whether defendant was or was not negligent in the first instance; he is the real actor whose negligence in fact resulted in the production of the injury.

It has been held that if a traveler on the highway erects and insecurely props a fallen telephone pole which obstructs his passage, but which later because of insufficient support again falls and injures another traveler then passing, the owner and operator of the line is not liable for the injury, although the duty imposed by law required it to use a high degree of care in the selection and frequent inspection of its wire-carrying appliances in order to make secure against accident those using the highway. *Horton* v. *Telephone Co.*, 146 N. C. 429. It was the intervention of another which became the superseding or responsible cause. Had he permitted the pole to remain where he found it, the accident would not have occurred, however negligent the company may have been in the performance of its legal obligations to the public. The defendant's negligence in failing properly to secure its poles was not deemed the proximate cause of the injury, because its connection with the injury was broken by a responsible intervening cause. So, in this case, the defendant is not liable for the injury, unless the injury was in the natural and ordinary course of things to be anticipated as the direct consequence of its negligent act, so that its negligence was an essential link in the chain of causation. In other words, had not the coal company negligently permitted the car to escape, would the mere negligent act of the defendant have resulted in producing the injury inflicted upon plaintiff's property?

A railroad company was held not liable in damages for injury to a boy of tender age who released the brake on a car standing upon a side-track, which ran down grade and killed him; because the accident was not such that the company could have reasonably anticipated it, although the company knew other cars standing upon the same branch had been released and set in motion in a similar way by other boys. See *Railroad* v. *Cromer*, 101 Va. 667; *Mars* v. *Canal Co.*, 54. Hun 625, 8 N. Y. S. 107.

As stated in 1 Thomp. Neg. 59: "If subsequent to the original wrongful or negligent act a new cause has intervened, of itself sufficient to stand as a cause of the misfortune, the former must be considered as too remote. The proximate cause of an injury is that act or omission which immediately causes or fails to prevent the injury, and without which the injury would not have happened, notwithstanding other acts or omissions concurring therewith."

It is a maxim of the law that the immediate, not the remote, cause of an event is regarded; and, in applying the maxim, the law rejects, as not constituting ground of action, damages not flowing proximately from the act complained of. *Gilson* v. *Canal Co.*, 65 Vt. 213. Or, as said by Wharton Neg. 138: "Suppose that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff; is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between the negligence and damage is broken by the interposition of defendant's responsible human action. I am negligent on a particular matter. Another person, moving independently, comes in and either negligently or maliciously so acts as to make my negligence injurious to another person. If so, the person so intervening acts as a non-conductor, and insulates my negligence, so that I can not be sued for the mischief which the person so intervening directly produces. He is the one who is liable." This statement of the rule aptly applies to the facts of this case. See *Winfree* v. *Jones*, 104 Va. 39, 1 L. R. A. N. S. 201.

In *Railroad Co.* v. *Kellogg, supra,* Justice Strong said: "The question always is, was there an unbroken connection.

between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act amounting to a wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.'' ''When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through consequences resulting therefrom, this consequence must not only be shown, but it must be so connected, by averment and evidence, with the act or omission, as to appear to have resulted therefrom, according to the ordinary course of events, as a proximate result of a sufficient cause.'' Cooley on Torts 74. By remote cause is intended that which may have happened and yet no injury have occurred, notwithstanding that no injury could have occurred if it had not happened. *Railroad Co.* v. *Trainer,* 33 Md. 542; *Troy* v. *Railroad Co.,* 99 N. C. 298, 6 Am. St. 521.

In *Washington* v. *Railroad Co.,* 17 W. Va. 190, this court has said: ''The cause of an injury, in the contemplation of law, is that which immediately produces it as its natural consequence. Therefore, if a party be guilty of an act of negligence which would naturally produce an injury to another, but before such injury actually results a third person does some act which is the immediate cause of the injury, such third person is alone responsible therefor, and the original party is in no respect legally resonsible therefor, though the injury could never have occurred but for his negligence. The casual connection between the first act of negligence and the injury is broken by the intervention of the act of a responsible party, which act is in law regarded as the sole cause of the injury, according to the maxim *in jure non remota causa sed proxima spectatur.*'' See also *Fawcett* v. *Railroad Co.,* 24 W. Va. 755. In *Schwartz* v. *Shull,* 45 W. Va. 405, it is held that ''the proximate cause of an injury is the last negligent act

contributing thereto and without which such injury would
not have resulted." In that case an instruction was held
erroneous which told the jury that if it believed from the evi-
dence the defendant was negligent and such negligence was
the proximate cause of the injury it must find for the plain-
tiff, although it believed that another person's negligence
intervened between the negligence of the defendant and the
injury.

In *Risque* v. *Railroad Co.,* 104 Va. 476, it was held that if a
railroad company delivers, on a siding, to a company operat-
ing an iron furnace, cars without brakes or with unsound
brakes, in consequence of which defect a servant of the receiv-
ing company is injured, his remedy is against the latter, and
not against the railway company. The court held the ore
company liable, because it permitted the use of the car when
it knew, or by inspection could readily have ascertained, the
car's defective condition, in either of which events it should
have declined to accept it or to permit its employees to use it,
or have repaired the defect.

But, in contravention of the principles announced by the
authorities cited, plaintiff relies on *Lane* v. *Atlantic Works,*
111 Mass. 136; *Seale* v. *Railroad Co.,* 65 Tex. 274; *Hughes* v.
*McDonough,* 43 N. J. L. 459; *Railroad Co.* v. *Rainey,* 42 Md.
117, and other cases; the facts of which materially differ from
those found in the case now under review.

The facts of the Lane case may be stated as a fair illustra-
tion of the facts of each of the other cases. There the defend-
ant company carelessly left in a public street a truck so un-
skillfully loaded that the shipment of loose iron could easily
be dislodged, and in falling result in injury to persons using
the highway. A child climbed on the truck and dislodged the
iron and caused it to fall on an injure another child, attracted
by the first and at whose invitation he approached the truck.
But, even under these facts, the court said that, if the plaintiff
actively participated in the dislodgment of the iron, or
approached the truck as actor for the purpose of encouraging
his associate, he could not recover damages for the injury,
unless he went there attracted by curiosity or upon invitation
and was in the exercise of due care; and, further, that "in an
action to recover for defendant's negligence, to which the

fault of another contributed, defendant's liability is not affected by the fact that the fault of such person was not negligence, but *voluntary* wrongdoing, if it was conduct which they should have apprehended and provided against.'' This case, when properly analyzed, does not conflict with the general trend of other authorities heretofore cited by us.

In the Texas case, a locomotive of the railroad company, by the emission of sparks, ignited combustible material which the company permitted to accumulate on its right of way, and from which, when ignited, a strong wind caused the fire to spread in the direction of property belonging to the plaintiff, whose daughter's clothing caught fire while she was engaged in an effort to save his property, thus inflicting injuries from which she died. But the court said: ''If, subsequent to the original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote. The original wrongful or negligent act will not be regarded as the proximate cause, where any new agency not within the reasonable contemplation of the original wrongdoer has intervened to bring about the injury''; but ''where, however, the intervening cause and its probable or reasonable consequences are such as could reasonably have been anticipated by the original wrongdoer, the causal connection between the original wrongful act and the subsequent injury is not broken, and an action may lie therefor.'' This holding, in view of the facts, does not contravene the rule we have announced.

In the Hughes case, plaintiff was a blacksmith, and skillfully shod a horse. Defendant, in order to produce the belief in the mind of the owner ''that the work of the plaintiff was badly done,' privily loosened such shoe'', and drove a nail in the horse's foot, whereby plaintiff lost the custom of the owner. ''The contention was that the wrong was done to Van Riper (the owner), that it was his horse whose shoe was loosened and whose foot was pricked, and that the immediate injury and damage were to him, and consequently the damages of the plaintiff were too remote to be made the basis of a legal claim.'' But the court said: ''The illegal act of the defendant had a close causal connection with the hurt done to the plaintiff, and such hurt was the natural and almost direct product of such

cause. Such harmful result was sure to follow, in the usual course of things, from the specific malfeasance. The defendant is conclusively charged with the knowledge of this injurious effect of his conduct, for such effect was almost certain to follow from such conduct without the occurrence of any extraordinary event or the help of any extraneous cause. The act had a two-fold injurious aspect: it was calculated to injuse both Van Riper and the plaintiff, and, as each was directly damnified, I can perceive no reason why each should not repair his losses by an action.''

In the Rainey case, the last point in the syllabus shows, without a statement of the facts, the inapplicability to the facts of this case. It is: ''Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if those intervening causes were *set in motion* by the original wrongdoer.''

An examination of other cases cited by plaintiff will show a tendency to support, rather than to contravene, the principles announced by the authorities cited in support of the finding on this review.

Our conclusion, therefore, is to reverse the judgment of the circuit court, set aside the verdict of the jury, and enter a *nil capiat*, the latter because from the proof it clearly appears that plaintiff. has no cause of action against the defendant.

*Reversed and Rendered.*